**Catherine T. CARDOZA, Petitioner,**

v.

**REAL ESTATE COMMISSION of the District of Columbia, Respondent.**

**No. 4240.**

District of Columbia Court of Appeals.

Argued Sept. 16, 1968.

Decided Jan. 8, 1969.

---

2. The investors were authorized by the owners to deduct the commission from the loan before payment to the owners.

**816**

Henry Lincoln Johnson, Jr., Washington, D.C., for petitioner.

Ted D. Kuemmerling, Asst. Corp. Counsel, with whom Charles T. Duncan, Corp. Counsel, and Hubert B. Pair, Principal Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD, Chief Judge, and FICKLING and KERN, Associate Judges.

FICKLING, Associate Judge:

The respondent, after a hearing, revoked petitioner's license for (1) demonstrating such unworthiness to act as a real-estate broker as to endanger the public interest,[1] and (2) sanctioning and permitting Charles B. Mitchell and Jack W. Reiss to act as

real-estate brokers under her license.[2] Petitioner appeals.

Petitioner was licensed in the District of Columbia as a real-estate broker trading as Cardoza Realty and Investment Co., at 3605 Georgia Avenue, N. W. In 1963 the Century Mortgage Company, a corporation, was organized to engage in the sale of mortgage notes and the refinancing of real property. Petitioner was *Century's* only corporate officer licensed as a real-estate broker and was authorized by the respondent to transact real-estate business at 1430 K Street, N. W., the office address of *Century*. She was to receive from this company fifty dollars monthly plus twenty-five dollars for each District of Columbia note sale consummated by it. The principal shareholders of the company agreed to save harmless and indemnify petitioner from any liability which she might sustain in consideration of her acting in the capacity of the licensed broker-officer. She employed two real-estate salesmen, Charles B. Mitchell and Jack W. Reiss, who operated out of her office at *Century*.

It is undisputed that Mitchell and Reiss acted as brokers when, during 1964, Mitchell for a commission arranged the refinancing of certain real estate located in the District of Columbia, and when Mitchell and Reiss for a commission negotiated a loan on certain real estate located in Virginia.[3] Petitioner was not advised of any of these transactions, nor did she in any manner participate in them.

However, petitioner rarely visited the premises of *Century* and made no attempt to be actively engaged in or to supervise the brokerage business of the company. Mitchell was permitted to be solely responsible for the brokerage business, and Reiss was permitted to associate himself with the business of *Century* conducted by Mitchell.

1. D.C.Code 1961, § 45–1408(h).

2. D.C.Code 1961, §§ 45–1401 and 45–1408 (*l*).

3. See Reiss v. Real Estate Commission, D.C.App., 248 A.2d 814 (decided this date).

Petitioner contends that the evidence is insufficient to support the order of revocation. It is clear that both Mitchell and Reiss held themselves out as and performed the duties of real-estate brokers in violation of the statute.[4] Not only did Mitchell and Reiss accept their commissions directly from their clients, but they both testified that petitioner was unapprised of the specific details of the aforementioned transactions.

■ If a real-estate broker, either knowingly or culpably, permits an employee to act unlawfully in the performance of his duties as a real-estate agent, his license may be revoked or suspended, Greene v. Real Estate Commission, D.C.App., 218 A.2d 508 (1966). In the instant case, petitioner either knowingly or "with culpable fault" permitted her license to be used unlawfully by Mitchell and Reiss. She agreed to lend the use of her license to *Century* for fifty dollars per month plus twenty-five dollars for each real-estate transaction consummated. However, she had an agreement with the principal stockholders to hold her harmless with respect to any liability or detrimental action she might sustain by reason of her business association with the company. Petitioner seldom visited the *Century* office and exercised no supervision over either Mitchell or Reiss who testified that petitioner knew that they were using her broker's license in arranging and negotiating mortgage loans, although she was not informed of the specific details of each transaction. Petitioner claims that she had no knowledge of nor did she participate in the 1964 transactions of Mitchell and Reiss. However, ignorance is no excuse for one who, in effect, blindfolds himself or fails to inquire about significant happenings in his own office. Greene v. Real Estate Commission, supra.

Clearly, petitioner knowingly or "with culpable fault" and omission permitted Mitchell and Reiss to act unlawfully as real-estate brokers and, thereby, demonstrated her unworthiness and incompetency to act as a real-estate broker.

Affirmed.

---

4. D.C.Code 1961, § 45–1401 states:
   "* * * [I]t shall be unlawful in the District of Columbia for any person * * * to act as a real-estate broker * * * without a license issued by the Real Estate Commission of the District of Columbia."
   A real-estate broker, as defined in D.C. Code 1961, § 45–1402, includes:
   "* * * [one] who, for another and for a fee, commission * * * negotiates or offers or attempts or agrees to negotiate, a loan secured or to be secured by a mortgage, deed of trust, or other encumbrance upon or transfer of real estate, * * * *"